**O**

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD J. VOLIS,

Plaintiff,

v.

HOUSING AUTHORITY OF THE CITY OF LOS ANGELES (HACLA), et al,

Defendants.

Case No. CV 14-08747 DDP (PLAx)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Dkt. 74]

Presently before the court is Defendants' Motion for Summary Judgment. Having considered the submissions of the parties, the court grants the motion and adopts the following Order.

**I. Background**[1]

Pro se Plaintiff Richard Volis, who is disabled, first received a Section 8 housing subsidy voucher from Defendant Housing Authority of the City of Los Angeles ("HACLA") in 1993. (SUF 3.)

[1] The facts as stated herein are drawn from Defendants' Separate Statement of Uncontroverted Facts ("SUF") and, to the extent possible, Plaintiff's Separate Statement of Uncontroverted Facts ("PSUF").

Under federal guidelines, Plaintiff, a single man residing alone, was eligible for a one bedroom voucher. (Declaration of Angela Davis at 17.)[2] Beginning in September 2010, Plaintiff resided in a two bedroom condominium in Sylmar, California ("the condo"). (SUF 5; PSUF 2.)

HACLA must conduct inspections of subsidized housing to ensure that the properties comply with the Department of Housing and Urban Development ("HUD")'s Housing Quality Standards ("HQS"). (SUF 7.) In or about March 2013, Plaintiff alleged that the condo did not meet HQS standards. (SUF 8l; See also note 4, below.) On May 10, 2013, the condo failed an inspection due to several HQS violations. (Ex. 501.) On May 15, HACLA notified Plaintiff and the condo owner of the failed inspection and notified them that if the owner failed to remedy the problems and the unit failed re-inspection, HACLA's Housing Assistant Payment ("HAP") would be "abated." (Exs. 502, 503). The notification letter explained, "Abatement means that no further payment will be made on the unit until it has passed inspection." (Id.)

Plaintiff asserts that he made a request for an exception payment standard, or higher rent subsidy, to HACLA on June 4, 2013. (SUF 21; PSUF 7.) Plaintiff requested an exception payment of 110% to 120% of the standard subsidy.[3] (SUF 23.) HACLA has no record of Plaintiff's request before June 10, 2013.

---

[2] Ms. Davis' declaration is not filed as a separate exhibit, but rather attached to Defendants' motion and paginated sequentially.

[3] As discussed in further detail below, a public housing agency such as HACLA may establish a higher payment standard than usual as a reasonable accommodation of a housing program participant's disability. 24 C.F.R. § 982.505(d).

On June 6, the condo failed a follow-up inspection. (SUF 13-14.) HACLA therefore placed the condo in "abatement" and suspended subsidy payments, effective June 7. The condo failed repeated additional inspections between July 1 and August 14, 2013. (SUF 16-17.) The condo remained in abatement during that time. (SUF 16.)

HACLA made no subsidy payments to the condo's owner after June 1. (SUF 19.) On September 25, 2013, HACLA informed Plaintiff that it could not grant his request for an exception payment standard because the condo was not in compliance with HQS standards and was in abatement. (SUF 24; PSUF 15.) HACLA terminated its contract with the condo owner in October or November after the owner failed to remedy the HQS violations. (Suf 18; PSUF 17.)

On October 22, 2013, HACLA gave Plaintiff a new voucher to use on another rental housing unit. (SUF 27; PSUF 18.) The new voucher was valid for up to 120 days. (SUF 28.) On October 30, HACLA's counsel informed Plaintiff that HACLA could not consider any request for an exception payment standard until and unless he used his new voucher on a new, qualifying rental unit. (SUF 26.)

Plaintiff alleges that he had difficulty locating a Section 8-eligible unit that would accommodate his emotional support animals. (PSUF 20; SUF 29.) Plaintiff did not submit any rental applications within the new voucher's 120 day validity period. (SUF 30.) In February 2014, Plaintiff requested, and received a 60 day extension on his new voucher. (SUF 31.) He did not submit any rental applications during the additional 60 days. (SUF 32).

On April 26, Plaintiff requested and received a second 60 day extension of the new voucher. (SUF 33.) He again did not apply

for any new housing. (SUF 34.) In June 2014, Plaintiff requested a third extension. (SUF 35; PSUF 19.) HACLA granted Plaintiff a final, thirty day extension, and notified Plaintiff that HACLA could not grant any further extensions. (SUF 36-37.) Plaintiff did not submit any rental applications during the thirty day final extension period, and was terminated from the Section 8 program on July 23, 2014. (SUF 41, PSUF 21.)

Plaintiff's complaint alleges that HACLA's denial of his request for a higher rent subsidy and refusal to extend his Section 8 housing voucher violate the Americans with Disabilities Act and the Rehabilitation Act. Plaintiff also claims that the allegedly discriminatory acts are retaliation against Plaintiff for bringing a prior federal lawsuit against Defendant.[4] Defendant now moves for summary judgment.[5]

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the

---

[4] This is the second federal lawsuit filed by Mr. Volis against HACLA and its employees. The crux of the first lawsuit was an allegation that HACLA falsified an inspection report in order to find Volis' rental unit to be habitable and, as a consequence, allowed the landlord of the unit to increase the Plaintiff's rent. See CV 13-01397-MMM, Dkt. 3. Another judge of this court granted HACLA's Motion to Dismiss. (CV 13-01397-MMM, Dkt. 115.) Plaintiff's appeal of that order remains pending.

[5] Plaintiff's complaint also alleges a cause of action for obstruction of justice, a crime, for which there is no private right of action.

court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel have an obligation to lay out their

support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

Plaintiffs complaint appears to allege discrimination claims under Title II of the ADA. To prevail on such a claim, plaintiff must show that he is disabled, that he was denied a public benefit, and that the discrimination, denial of benefit, or exclusion from a service was by reason of his disability. See Cohen v. City of Culver City, 754 F.3d 690, 695 (9th Cir. 2014); 42 U.S.C. § 12132. Title II's anti-retaliation provisions prohibit retaliation or discrimination against anyone, disabled or not, on the basis of that person's efforts to oppose unlawful discriminatory practices. Barker v. Riverside County Office of Educ., 584 F.3d 821, 827-28 (9th Cir. 2009). Defendants allege that no reasonable trier of fact could conclude that HACLA denied Plaintiff's requests by reason of his disability, and that all of his claims therefore fail.

A. Payment Exception Standard

HUD's housing choice voucher program provides housing assistance to Section 8 tenants through a HAP contract. See U.S. Department of Housing and Urban Development, Housing Assistance Payments Contract, https://portal.hud.gov/hudportal/documents/huddoc?id=DOC_11737.pdf The local voucher program is administered by a Public Housing Agency ("PHA"), such as Defendant HACLA. Id. The HAP contract is

an agreement between the housing agency and the owner of a unit occupied by an assisted family. Id. During the HAP contract term, the housing agency will pay housing assistance payments to the owner in accordance with the HAP contract. If the landlord does not maintain the contract unit in accordance with housing quality standards, the housing authority may exercise any available remedies, including suspension of housing assistance payments, abatement or other reduction of housing assistance payments, and termination of the HAP contract. Id. at 4; 24 C.F.R. § 983.208(b)(2).

HACLA argues that it could not, as a matter of law, have granted Plaintiff the payment exception standard, or higher subsidy, he requested. PHAs must establish standard voucher payment amounts based on HUD's published fair market rents. 24 C.F.R. § 982.503(a). A PHA may establish a "basic range" standard at any level between 90 percent and 110 percent of HUD's published fair market rate without HUD approval. 24 C.F.R. § 982.503(b)(1)(i). The regulations in effect in 2013 allowed a PHA to establish a higher payment standard as a reasonable accommodation of a person with a disability. 24 C.F.R. § 982.505(d). That higher standard, however, had to fall within the basic range.[6] Id. Thus, because the basic range could not exceed 110% of HUD's fair market rate, the higher payment standard could also not have exceeded 110%.

---

[6] Under the current regulations, a PHA may establish an exception payment standard of up to 120% of the published fair market rent as a reasonable accommodation of a person with a disability. 24 C.F.R. § 982.503(b)(1)(iii); 24 C.F.R. § 982.505(d).

HACLA has submitted evidence that Plaintiff requested an exception payment standard of 110% to 120%. Under the applicable regulations, HACLA could not have granted Plaintiff the exception standard he sought. Plaintiff cannot establish, therefore, that HACLA denied him the exception on the basis of his disability.

HACLA could not have provided Plaintiff with the higher subsidy payment he sought for a second, independent reason. A PHA may not make subsidy payments on a dwelling unit that fails to meet HUD's HQS standards as a result of the owner's failure to maintain the dwelling. 24 C.F.R. § 982.404(a). Here, the owner of the condo did not remedy the HQS violations at any point between March 2013 and the termination of the HAP contract. As HACLA's September 25 letter stated, Plaintiff's request for a higher subsidy payment was denied because the condo "did not pass the Housing Quality Standard of safe and sanitary housing. You cannot remain in the unit in which you are requesting the exception payment standard." (Ex. 516.) In other words, because HACLA did not have the authority to make any subsidy payment on the condo, it necessarily could not have granted Plaintiff's request to make a higher than standard payment. HACLA's denial of Plaintiff's request, therefore, could not have been discriminatory.

Plaintiff argues that the condo suffered from HQS deficiencies well before the May and June 2013 inspections that triggered the final abatement period and, ultimately, termination of the HAP contract.[7] (Opposition at 11-13.) Indeed, allegations regarding

---

[7] Although Plaintiff attaches various notices of failures as (continued...)

the habitability issues at the condo formed the basis of Plaintiff's first federal lawsuit. (See note 4, above.) Even if Plaintiff is correct, however, those facts do not help him. First, HACLA was authorized to exercise any of its remedies in response to HQS deficiencies. 24 C.F.R. § 983.208(b)(2). Second, HACLA was forbidden from making payments for a dwelling that failed to meet HQS standards. 24 C.F.R. § 982.404(a). If, as Plaintiff asserts, the condo failed HQS minimums even prior to May 2013, those failures would not have provided HACLA with any basis or authority to make any payments to the condo owner, let alone to grant Plaintiff the exception standard he sought of 110 to 120 percent.[8] 24 C.F.R. § 982.505(d).

Because the evidence shows that HACLA did not have the authority to grant Plaintiff the extension payment standard he requested, HACLA's denial of that request was not based on Plaintiff's disability.

B. New Voucher Extension

Plaintiff brings a second discrimination claim based upon HACLA's denial of his June 2014 request for a fourth extension of his new voucher. Under HUD regulations, the initial term of a

---

[7](...continued) exhibits to the Motion, Defendants object that those exhibits are not properly authenticated.

[8] Plaintiff's argument that he completed an exception payment standard request on June 1 and delivered it to HACLA on June 4 fails for similar reasons. Even if Plaintiff is correct that he applied on that earlier date, rather than on June 10, there is no dispute that HACLA made no payments to the condo owner after June 1, and did not have authority to do so unless and until the condo owner remedied the HQS deficiencies. There is no dispute that the owner never did so.

housing subsidy voucher must be at least sixty days. 24 C.F.R. § 982.303(a). If a voucher extension is needed as a reasonable accommodation of a disability, the PHA "must extend the voucher term up to the term reasonably required for that purpose." 24 C.F.R. § 982.303(b)(1). HUD policies encourage PHAs "to be generous in establishing reasonable initial search terms and subsequent extensions for families with a member who is a person with a disability." (HUD Notice PIH 2013-19, Ex. 529 at 7.). While there is no maximum extension period, PHAs must approve extensions in accordance with their administrative plan. (Id.) PHAs may not extend voucher terms indefinitely. (Id.)

HACLA's administrative plan provides for the requisite 60 day minimum voucher term. (Ex. 527 at 10.1.) In the case of a family including a person with a disability, HACLA's administrative plan allows the voucher to be "extended in increments of 60 days up to a term reasonably required . . . but not to exceed 240 cumulative days unless the Section 8 Director approves an additional 30-day extension in writing." (Id. at 10.2.2.) Thus, HACLA's administrative plan provides for a maximum extension period of 270 days.

Here, there is no dispute that Plaintiff received the maximum possible 270-day extension of his new voucher. Plaintiff argues that he should have been allowed "sufficient time to locate a suitable housing that would accommodate his disabilities and accept Plaintiff's emotional support animals in a manner consistent with his disability."[9] (Opp. at 17.) There is no dispute here that

---

[9] Plaintiff also argues, however, that he "declined the new (continued...)

Plaintiff is disabled, or that he was entitled to a reasonable accommodation. HACLA's administrative plan, however, establishes the bounds for those accommodations, consistent with HUD guidance. That guidance forbids HACLA from granting the type of indefinite extension to which Plaintiff appears to argue he was entitled. No reasonable trier of fact could conclude that, by giving Plaintiff the maximum term reasonable accommodation provided for in its administrative plan, HACLA discriminated against Plaintiff on the basis of his disability, particularly in light of the evidence that Plaintiff did not submit a single rental application during the entirety of the 270-day extended term.

Because HACLA is entitled to summary judgment on Plaintiff's disability discrimination claims, which are the basis for Plaintiff's retaliation claim, summary judgment on that claim is warranted as well.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgement is GRANTED.[10]

IT IS SO ORDERED.

Dated: September 30, 2016

DEAN D. PREGERSON
United States District Judge

---

[9](...continued) voucher to relocate." (Opp. at 15.)

[10] Plaintiff's Request to file Surreply (Dkt. 84) is denied. In any event, the contents of Plaintiff's proposed surreply would not affect the court's reasoning.